**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RIDDELL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | Judge: |
| | ) | |
| BRAD HORSTMANN and BSN SPORTS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff Riddell, Inc. ("Riddell"), by and through its attorneys, for its Complaint for Injunctive Relief and Damages against Defendants Brad Horstmann ("Horstmann") and BSN Sports, LLC ("BSN"), alleges as follows:

**NATURE OF THE CASE**

1.      This is an action for immediate relief from a persistent, well-orchestrated, and wrongful campaign of unfair competition by Horstmann, a former sales representative for KollegeTown Sports ("KollegeTown"), the sports apparel division of Riddell (together, with KollegeTown, the "Company"), and BSN, a direct competitor of the Company that is engaged in an extensive campaign of predatory poaching and unfair competition against the Company.

2.      Until his recent abrupt resignation, Horstmann served as the top KollegeTown sales representative.  Despite his contractual non-competition obligations to Riddell that were entered into as a condition of the closing of Riddell's multi-million-dollar acquisition of KollegeTown, Horstmann has commenced employment with BSN in a role that is directly competitive with the Company and that imperils the Company's confidential information, goodwill, and employee and customer relationships.

1

3.     Despite its full awareness of Horstmann's contractual obligations to Riddell, BSN has intentionally and unjustifiably caused Horstmann to breach those obligations in the latest of a long line of BSN acts of unlawful competition directed at the Company.

4.     In furtherance of BSN's deliberate and anti-competitive scheme to displace the Company in the marketplace, BSN has induced several of the Company's other top sales representatives to tender their resignations without notice and immediately commence directly competitive employment with BSN, in breach of the sales representatives' contractual and legal duties to the Company.  Several of these defected employees, at all times in concert with BSN, and at times while still trusted employees of the Company, have: (a) solicited numerous of their Company customer accounts in an effort to divert that business to BSN; (b) solicited, encouraged, and induced the Company's other top sales representatives to leave the Company and join in competitive employment with BSN; and (c) misappropriated confidential Company information, including by disseminating sensitive customer information among the upper ranks of BSN's sales force.  BSN's unlawful conduct has now spawned litigation in five actions in four states across the country in the last six months, each of which stem from BSN's attack on the Company and tortious interference with the Company's sales representatives' contractual obligations to the Company.

5.     Like the other Company employees who have blatantly disregarded their contractual and legal obligations to the Company, Horstmann is in brazen breach of his non-competition obligations to the Company by accepting BSN employment as a sales professional, and threatens to breach his obligations to not solicit Company customers and employees and to not misappropriate the Company's confidential information with which he was entrusted.

6.     As a result of BSN's and Horstmann's unlawful acts, the Company has suffered, and will continue to suffer, irreparable harm.  The immediate purpose of this lawsuit is to secure

temporary injunctive relief to prevent further violations of Defendants' contractual and/or common law obligations. The Company also seeks to obtain substantial monetary damages and other relief for the ongoing harm Defendants' unlawful actions have caused and will continue to cause to the Company.

## THE PARTIES

7. Plaintiff Riddell, Inc. is an Illinois corporation with its principal place of business at 1700 W. Higgins Road, Suite 500, Des Plaines, Illinois 60018. Riddell is a premier designer and developer of athletic equipment and apparel. Riddell wholly owns KollegeTown, an athletic apparel company Riddell acquired in October 2015.

8. Defendant Brad Horstmann is an individual and a citizen of Iowa who resides, upon information and belief, at 4308 Roxbury Drive N.W., Cedar Rapids, IA 52405. Horstmann, a former sales representative for KollegeTown, is party to a Sales Representative Employment Agreement with Riddell, a true and correct copy of which is attached hereto as Exhibit A. Horstmann has recently accepted employment with BSN.

9. Defendant BSN Sports, LLC is a Delaware limited liability company with its principal place of business at 14460 Varsity Brands Way, Farmers Branch, Texas 75244. BSN's sole member is Varsity Brands Holding Co., Inc., an Indiana corporation with its principal place of business at 14460 Varsity Brands Way, Farmers Branch, Texas 75244. BSN is an athletic equipment and apparel company directly competitive with the Company.

## JURISDICTION

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, and Riddell, unlike each Defendant, is a citizen of Illinois; thus complete diversity of citizenship exists.

11.     This Court has personal jurisdiction over Horstmann and venue is appropriate in this judicial district because, pursuant to Section 9 of Horstmann's Agreement, Horstmann submitted to personal jurisdiction of the courts of Illinois: "The Representative consents to the jurisdiction of the courts of Illinois and the application of Illinois law with respect to any matter or thing arising out of this Agreement." Jurisdiction is also appropriate against Horstmann because he breached contractual obligations owed to Riddell in Illinois and, while he was employed by the Company, he engaged in regular, substantial, and not isolated activities within the State of Illinois, including by regularly conducting business within Illinois.

12.     This Court has jurisdiction over BSN because BSN is engaged in regular, substantial, and not isolated activities within the State of Illinois, is registered to do business in Illinois, and is in fact actually doing substantial business through offices in Bourbonnais, Danville, Yorkville, Rantoul, and Springfield. This Court also has personal jurisdiction over BSN because the claims stated against BSN arise from and are related to its contacts with and activities in Illinois.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all or a substantial part of the events giving rise to these claims occurred in this district, including Horstmann's breaches of the contractual duties owed to Riddell and BSN's efforts to interfere with those duties.

## FACTUAL BACKGROUND

### The Company's Business

14.     Riddell is a premier designer and developer of football helmets, protective sports equipment, head impact monitoring technologies, apparel, and related accessories. A recognized leader in helmet technology and innovation, Riddell is the leading manufacturer of football helmets and shoulder pads, and a top provider of reconditioning services (cleaning, repairing, repainting, and recertifying existing equipment).

15.     In recent years, Riddell has expended significant resources to grow its apparel business and bolster its sales force.

16.     In October 2015, Riddell strengthened its apparel offering and distribution by acquiring KollegeTown, an innovative leader in the athletic apparel industry for youth, high school and college teams, and corporate sales.

17.     The acquisition of KollegeTown, which excels in screen printing and embroidery on athletic apparel, provided Riddell with access to new and unique sales channels for its apparel, while expanding its capabilities, customer service, and product offering.

18.     KollegeTown is a "team dealer," which connects, among other clients, colleges, high schools, and youth sports organizations with major brands to sell them various types of apparel. KollegeTown's sales representatives sell various brands to schools, teams, and even corporate clients nationwide.  The bulk of KollegeTown's business, however, is in the Midwest.

19.     KollegeTown operates as a division of Riddell and now manages Riddell's growing apparel business.

20.     In connection with the acquisition, and as a condition thereof, Horstmann executed the Sales Representative Employment Agreement (the "Agreement") with Riddell.  Horstmann was the top KollegeTown sales representative and had worked at KollegeTown since its inception.  His execution of the Agreement was a critical component of the transaction, as significant value of KollegeTown lay in the goodwill, customer relationships, and confidential information it had developed throughout its history in the business.  The restrictions and obligations in Horstmann's Agreement were key to protecting the value of what Riddell was paying to acquire.

21.     Horstmann was such a key sales representative that in connection with Riddell's acquisition of KollegeTown, he received a transaction bonus of $15,000.  As an additional term of

the transaction, Riddell adopted a growth incentive plan under which Horstmann could earn financial

incentives for sales growth.

### Horstmann Voluntarily Enters into the Sales Representative Employment Agreement in Connection with Riddell's Acquisition of KollegeTown

22.     In connection with the KollegeTown acquisition, and as a condition thereof, Riddell

extended an offer of employment to Horstmann as a KollegeTown Sales Representative.  Horstmann

accepted Riddell's offer by countersigning the Agreement, which is dated October 30, 2015, the day

the KollegeTown acquisition closed.

23.     In consideration for Horstmann's acceptance of the terms in the Agreement, Riddell,

in addition to continuing to employ Horstmann, provided Horstmann the opportunity to earn new-

growth incentive compensation equaling 1 percent of growth targets.  Section 5.3.

24.     In signing the Agreement, Horstmann agreed to abide by a non-competition clause

as follows:

> Representative hereby agrees that for a period of eighteen (18) months following the resignation or termination of his employment for any reason, Representative will not engage directly or indirectly (as an employee, contractor, owner, or agent), in sales, sales management or strategic marketing related activities competitive with the Company Business, within the geographic area assigned to the Representative by the Company during the last year of his employment.

Section 7.5.

25.     "Company Business" is defined in the Agreement as "any business that competes

with the Company in the sales, distribution, and reconditioning of football equipment and athletic

apparel." *Id.*

26.     The Agreement also contained an eighteen (18) month customer non-solicitation

clause as follows:

> Representative hereby agrees that for a period of eighteen (18) months following the resignation or termination of his employment for any reason, he will not, directly or indirectly and in any way, contact, interfere, solicit on behalf of another, entice or take away, or contract with any Restricted Customer.

Section 7.3(a).

27.     "Restricted Customer" is defined in the Agreement as any one of the following:

(i) a current client or customer of the Company with whom Representative has developed a business relationship or had substantial business contact as a result of his employment with the Company; (ii) a customer of the Company to whom the Company has made sales in the past twelve (12) months and with for whom Representative was a primary or key contact; or (iii) a prospective customer with whom Representative has been actively discussing, on behalf of the Company, a potential business relationship.

*Id.*

28.     In the Agreement, Horstmann also agreed to abide by an eighteen (18) month employee non-solicitation clause as follows:

Representative hereby agrees that for a period of eighteen (18) months following the resignation or termination of his employment for any reason, he will not, directly or indirectly and in any way, induce, encourage, solicit, entice, take away, or procure any person who is a Restricted Employee to leave such employment with the Company.

Section 7.3(b).

29.     "Restricted Employee" is defined in the Agreement as "any employee of the Company on or within six (6) months of Representative's resignation or termination date who has or had substantial responsibility with the Company for sales, account management, customer relationships or executive management." *Id.*

30.     In addition to his non-competition and non-solicitation obligations, Horstmann also agreed that he will not, during or after his employment, use or disclose any Confidential Information. Section 7.1. "Confidential Information" is defined in the Agreement to include, among other things, non-public information of the Company concerning costs, profits, and pricing; selling and pricing procedures and techniques; and customer information, including their identities, special demands, and past, current, and anticipated requirements for products or services. Section 7.2.

31.     The Company is entitled to injunctive relief in the event of a breach of the non-competition or non-solicitation obligations by Horstmann, who specifically acknowledged:

7

In the event of a breach or a threatened breach of this Agreement by the Representative, the Representative acknowledges that Riddell will face irreparable injury which may be difficult to calculate in dollar terms and that Riddell shall be entitled, in addition to remedies otherwise available at law or in equity, to temporary restraining orders and preliminary injunctions and final injunctions enjoining such breach or threatened breach.

Section 9.

32. The Agreement is governed by Illinois law. *Id.*

33. Horstmann's execution of the Agreement was knowing, willful, and informed.

34. Riddell has fully performed all of its obligations to Horstmann, including all conditions precedent under the Agreement.

35. The Agreement is supported by adequate consideration, is reasonable in scope, and is not more extensive than is reasonable and necessary for Riddell to protect its legitimate business interests, including but not limited to its confidential information and trade secrets, stable workforce, customer relationships, and goodwill.

**Horstmann's Employment by the Company**

36. After Riddell's acquisition of KollegeTown, Horstmann retained his role and stature as the top KollegeTown sales representative. Horstmann was responsible for, among other things, selling apparel and uniforms to institutional customers, including, without limitation, schools, athletic clubs, teams, sports leagues, recreational organizations, and corporate entities.

37. In this role, Horstmann was at the forefront of servicing, maintaining, and developing critical customer relationships in more than 20 states. During his employment at the Company, Horstmann had more than 450 customer accounts. These relationships, which Horstmann would not have had but for his employment, were developed and cultivated by the Company at great time and expense and over a number of years.

38. In his capacity as a sales representative, Horstmann was exposed to and helped to develop some of the Company's most competitively sensitive confidential information regarding the

customers with which it worked. This information includes, among other things, a master list identifying all of the Company's customers and their contact information; the commercial terms of the agreements between the Company and its customers; proposals submitted by the Company to prospective customers; and pricing, profit margin, and volume information. The Company developed this confidential information through its history of work in the industry, and substantial commitment of time and resources.

39. Horstmann was a vital driver of the Company's strategic plan. Horstmann had access to and/or helped develop the Company's confidential information concerning sales generated by his territory; strategic sales plans, projections, forecasts, and goals; pricing strategies and structures to best market and position the Company's services and products to new and existing customers; and non-public internal financial and performance information, including detailed confidential financial reports regarding sales across the entire KollegeTown division that reflect the sales generated by each of KollegeTown's sales groups and sales representatives, each customer order that was placed, the assigned sales representative, the order type, the invoiced amount, the job cost, and the profit margin.

40. If a competitor, such as BSN, obtained Horstmann's knowledge of the confidential information to which he was privy by virtue of his employment at the Company, the competitor would potentially be able to use such information to eviscerate the competitive advantage that the Company has spent years and significant resources developing and which Riddell acquired at considerable expense.

41. A competitor with access to the Company's customer information would have an unfair competitive advantage because it would not have to devote the substantial time and cost required to compile and develop such information and could quickly gain access to customers that

otherwise might not be possible. Indeed, a competitor armed with Horstmann's knowledge could use that information to undercut every aspect of the Company's apparel business.

### Horstmann Abruptly Tenders His Resignation from the Company and Accepts Competitive Employment with BSN in Breach of His Contractual Obligations

42.     On March 1, 2019, Horstmann abruptly tendered his resignation and did not disclose his future employment plans. The Company has recently learned that Horstmann is employed by BSN in a directly competitive capacity.

43.     BSN is and was at all relevant times aware of Horstmann's Agreement and the restrictive covenants contained therein, including the eighteen (18) month non-competition and non-solicitation restrictions.

44.     BSN engages in business competitive with the business of the Company within the meaning of the Agreement.

45.     Like the Company, BSN is a distributor of sports apparel and equipment. It, too, serves as a "team dealer" that connects customers such as colleges, high schools, and youth teams to major brands to sell them various types of apparel. BSN, which operates in 40 offices, and through more than 850 sales representatives nationwide, directly competes in sales with the Company.

46.     The market for services and products of the type offered by the Company and BSN is highly competitive, requiring a combination of pricing, market contacts, effective sales strategies, and interpersonal skills for success. Sales can be substantial. Indeed, Horstmann averaged more than $1.4 million in annual sales over the last three calendar years of his employment at the Company.

47.     BSN, like the Company, believes that it has a protectable interest in, among other things, its confidential information and the customers that its sales professionals service. To protect those interests, and as a testament to the intensely competitive market, BSN also requires its sales

professionals to agree to non-competition, non-solicitation, and confidentiality obligations as a condition of employment. Indeed, just last year, BSN sued a former sales representative who went to work for a competitor for breach of such restrictive covenants. *See BSN Sports, LLC v. Brad Logan*, No. 3:18-CV-029-MPM-RP (N.D. Miss. Feb. 2, 2018), Dkt. 1.

48.     Upon information and belief, BSN required Horstmann to execute a BSN Sports Confidentiality/Non-Compete/Non-Solicit Agreement ("BSN Non-Compete") as a condition of his employment. Upon information and belief, the BSN Non-Compete contains restrictive covenants limiting Horstmann, after his employment with BSN ends, from, among other things: (a) providing sales-related activities on behalf of a business, like Riddell, that engages in the sale of sports apparel or equipment to institutional customers in Horstmann's sales region; (b) soliciting customers that Horstmann had business contact with at BSN for the purpose of selling sports apparel or equipment; (c) recruiting or discussing employment with any BSN employee, or person who was a BSN employee within one year of such recruiting activity; or (d) using or disclosing BSN's confidential information, which BSN defines to include customer, inventory, supplier, product, cost, and pricing information. Upon information and belief, in executing the BSN Non-Compete, BSN and Horstmann acknowledged that Horstmann would inevitably give a competitor an unfair competitive advantage if Horstmann was employed in a position to use certain information and goodwill entrusted to Horstmann by BSN for the benefit of a competitor.

49.     Horstmann was hired as a Sales Professional for BSN. In his role as a Sales Professional at BSN, Horstmann is engaged in the sale of athletic apparel directly competitive with the Company in the territory where Horstmann worked for the Company in direct breach of his non-competition obligations to the Company.

50.     In this role, Horstmann will also solicit his former Company customers on behalf of

BSN. Horstmann's deep knowledge of the Company's customers and the details of the Company's confidential arrangements with the same will provide BSN an unfair competitive advantage, at the Company's expense, in its solicitation of such customers. These contacts will continue to prove highly valuable to BSN as it attempts to erode the Company's market share in the Midwest to its advantage.

51.     Horstmann's employment with BSN also places the Company's confidential information at grave risk, would give an unfair competitive advantage to BSN at the Company's expense, and would lead to the erosion of highly valuable goodwill and customer relationships in which the Company has invested significant resources.

52.     Horstmann's breaches and threatened breaches of his Agreement puts the Company's legitimate protectable interests at grave risk, including its goodwill, confidential information, customer relationships, and interest in maintaining a stable workforce of employees. It has also caused and will continue to cause substantial injuries and damages and irreparable harm to the Company for which no adequate remedy at law exists.

**BSN's Campaign of Predatory Poaching and Unlawful Competition**

53.     Horstmann's employment at BSN is part and parcel of BSN's persistent, well-orchestrated, and wrongful campaign of unfair competition against Riddell. In furtherance of this scheme, BSN is using former Riddell employees to raid Riddell's top sales representatives and solicit and divert Riddell's customers, in blatant disregard for their contractual obligations to the Company.

54.     On December 6, 2018, Riddell was forced to initiate a lawsuit against BSN in the United States District Court for the Southern District of Texas for BSN's tortious interference with a covenant not to compete between Riddell and another of its former sales representatives. *See Riddell, Inc. v. Todd Giambrone & BSN Sports, LLC*, No. 4:18-cv-4598 (S.D. Tex.).

55.     On December 7, 2018, Riddell filed suit against BSN and a former Company sales

representative in the United States District Court for the Northern District of Illinois. *See Riddell, Inc. v. Shawn Stimmel & BSN Sports, LLC*, No. 1:18-cv-08062 (N.D. Ill). In this action, Riddell alleges that while still a trusted employee of Riddell and after his directly competitive employment at BSN, a sales representative, in concert with and induced by BSN, covertly solicited and is continuing to solicit several of Riddell's top sales representatives to join competitive employment with BSN, and diverted and is continuing to divert Riddell customers and business opportunities from Riddell to BSN. Dkt. 63.

56.     On or around February 14, 2019, Joseph Kroetz, induced by and at the direction of BSN, abruptly resigned his employment from the Company, accepted competitive employment with BSN in breach of his non-competition obligations, and preemptively filed a declaratory judgment action in Dane County Circuit Court that was designed only to thwart Riddell's choice of forum. That action has since been removed to the United States District Court for the Western District of Wisconsin and a counterclaim has been asserted against Kroetz for violation of his contractual obligations to Riddell. *See Joseph Kroetz v. Riddell, Inc. et al.*, 3:19-cv-00188-wmc (W.D. Wis.).

57.     On or around April 8, 2019, Michael Baerg, induced by and at the direction of BSN, abruptly resigned his employment from the Company, accepted competitive employment with BSN, and preemptively filed a declaratory judgment action in the Superior Court of the State of California, Orange County Circuit Court. *See Michael Baerg v. KollegeTown et al.*, 30-2019-01062324-CU-PT-CJC (Sup. Ct. Cal., Orange Cnty.)

58.     BSN's hire of Horstmann—who was KollegeTown's top sales representative—continues BSN's trend of unfairly and unlawfully attempting to displace the Company in the marketplace by inducing former Company sales representatives to breach their contractual obligations to the Company by using Company confidential information and soliciting the

Company's customers and employees.

## COUNT I
## BREACH/THREATENED BREACH OF CONTRACT
### (AGAINST HORSTMANN ONLY)

59.     Riddell realleges and restates paragraphs 1–58 as if fully restated herein.

60.     The Agreement signed by Horstmann is a valid and enforceable contract entered into in exchange for good and valuable mutual consideration.

61.     The restrictive covenants in the Agreement are reasonably necessary to protect Riddell's legitimate protectable business interests and are reasonable in terms of scope.

62.     Riddell has fully performed every material obligation it owes to Horstmann under the Agreement, including, without limitation, by providing Horstmann with the following: (a) continuing employment for a significant period of time after his execution of the Agreement; (b) confidential and proprietary information; (c) access to customers; and (d) compensation and employment benefits, including growth incentives.

63.     The Agreement prohibits Horstmann, for a period of eighteen (18) months after the termination of his Riddell employment, from (a) engaging in sales, sales management, or strategic marketing activities with a competitor in the area assigned to Horstmann in his last year of employment; (b) soliciting Company employees to leave the employ of the Company, and (c) soliciting Company customers.

64.     BSN is competitive with the business of the Company within the meaning of the Agreement.

65.     Horstmann has breached and/or threatened to breach his Agreement by, among other wrongful acts, (a) working in an athletic apparel sales capacity for BSN in the same territory where

he worked for the Company, (b) taking part in the solicitation of Company employees, and (c) taking part in the solicitation of Company customers.

66.    The Company has suffered, and will continue to suffer, damages as a result of Horstmann's breaches.

67.    Unless Horstmann is enjoined from violating the terms of the Agreement, Riddell will suffer irreparable and incalculable harm well in excess of $75,000, including the loss of goodwill, customer relationships, the stability of its workforce, and proprietary and confidential information.

68.    Riddell lacks an adequate remedy at law and is entitled to injunctive relief.

## COUNT II
### TORTIOUS INTERFERENCE WITH CONTRACT
#### (AGAINST BSN ONLY)

69.    Riddell realleges and restates paragraphs 1–68 as if fully restated herein.

70.    Horstmann's Agreement is a valid and enforceable contract.

71.    BSN is and was at all relevant times aware of Horstmann's Agreement and the restrictive covenants contained therein.

72.    BSN intentionally and unjustifiably induced and/or is threatening to induce Horstmann to breach the Agreement by, among other wrongful acts, aiding and abetting, persuading, encouraging, inciting, and/or causing Horstmann (a) to engage in competition with the Company in violation of his contractual non-competition obligations, (b) to solicit and/or to attempt to solicit Company customers in violation of his contractual non-solicitation obligations, and (c) to solicit and/or to attempt to solicit Company employees to leave the Company's employ in violation of his contractual non-solicitation obligations.

73.     As a result of BSN's tortious interference and inducement, Horstmann has breached and/or is threatening to breach the Agreement by, among wrongful acts, (a) engaging in competition with the Company as an employee of BSN in violation of his contractual non-competition obligations, (b) directly, and/or indirectly through intermediaries, soliciting Company customers in violation of his contractual non-solicitation obligations, and (c) directly, and/or indirectly through intermediaries, soliciting Company employees in violation of his contractual non-solicitation obligations.

74.     Riddell has suffered, and will continue to suffer, damages because of BSN's conduct.

75.     Unless BSN is enjoined from tortiously interfering with the Horstmann Agreement, Riddell will be irreparably harmed.  No adequate remedy at law exists for this tortious interference.

## REQUEST FOR JURY DEMAND

76.     Riddell demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Riddell respectfully requests that judgment be granted in its favor and against Horstmann and BSN, and the Court enter an Order:

(i)     Enjoining Horstmann, and anyone acting in concert with him, from, directly or indirectly, soliciting, encouraging, or advising any Company employee to leave the employ of the Company in violation of the contractual obligations Horstmann owes to the Company as contained in the Agreement;

(ii)    Enjoining Horstmann, and anyone acting in concert with him, from, directly or indirectly, soliciting or enticing away any person, partnership, corporation, or other entity that was a customer or prospective customer in violation of the contractual obligations Horstmann owes Riddell as contained in the Agreement;

(iii)    Enjoining Horstmann from rendering any services, directly or indirectly, as an employee, officer, consultant, or in any other capacity, to BSN, in violation of the contractual obligations Horstmann owes Riddell as contained in the Agreement;

(iv)    Ordering Horstmann to return any and all copies, reproductions, summaries, or notes made from any confidential or proprietary information that came into his possession through his employment with the Company, or obtained by him thereafter;

(v)    Enjoining Horstmann, and anyone acting in concert with him, from using, copying, analyzing, or disseminating the Company's confidential and proprietary information in any fashion;

(vi)    Enjoining BSN, its officers, agents, servants, employees, and attorneys, and those acting in concert with them, from aiding or abetting or causing Horstmann to violate the contractual obligations he owes to Riddell as contained in the Agreement;

(vii)    Awarding Riddell compensatory, incidental, consequential, and punitive damages in an amount to be determined at trial;

(viii)    Awarding Riddell its costs and expenses, including attorneys' fees and costs (*see* Section 9 of the Agreement); and

(ix)    Awarding Riddell such other relief as this Court deems just and proper.


Dated:  April 11, 2019                           Respectfully submitted,

                                                 RIDDELL, INC.

                                                 By:/s/ *William C. O'Neil*
                                                     One of Its Attorneys

                                                 William C. O'Neil
                                                 Benjamin M. Ostrander
                                                 WINSTON & STRAWN LLP
                                                 35 West Wacker Drive
                                                 Chicago, IL  60601
                                                 (312) 558-5600
                                                 (312) 558-5700 (fax)

woneil@winston.com
bostrander@winston.com

David L. Aronoff (*pro hac vice* forthcoming)
WINSTON & STRAWN LLP
333 S. Grand Ave
Los Angeles, CA 90071
(213) 615-1700
(213) 615-1750 (fax)
daronoff@winston.com